1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KRISTA JACKSON, on behalf of herself, and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THE 3M COMPANY, f/k/a Minnesota Mining and Manufacturing, Co.; TYCO FIRE PRODUCTS L.P., successor in interest to THE ANSUL COMPANY; BUCKEYE FIRE EQUIPMENT COMPANY; CHEMGUARD INC.; and NATIONAL FOAM, INC.,<br><br>　　　　　　Defendants. | NO.<br><br>**CLASS ACTION<br>COMPLAINT FOR:**<br><br>**(1)　NEGLIGENCE;**<br>**(2)　PRIVATE NUISANCE;**<br>**(3)　PRODUCT LIABILITY FOR<br>　　　FAILURE TO WARN;**<br>**(4)　PRODUCT LIABILITY FOR<br>　　　DEFECTIVE DESIGN;**<br>**(5)　MEDICAL MONITORING;**<br>**(6)　TRESPASS; AND**<br>**(7)　VIOLATIONS OF RCW 19.86**<br><br>**JURY DEMAND** |

Plaintiff Krista Jackson ("Jackson" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, files this Class Action Complaint against THE 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.) ("3M"), TYCO FIRE PRODUCTS L.P., successor in interest to THE ANSUL COMPANY ("Tyco"), BUCKEYE FIRE EQUIPMENT CO., ("Buckeye"), CHEMGUARD, INC. ("Chemguard"), and NATIONAL FOAM, INC. ("National Foam") (collectively referred to herein as "Defendants"). Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and as to all other matters, on information and belief.

COMPLAINT - 1

## NATURE OF THE ACTION

1.      Whidbey Island, a picturesque community located approximately 30 miles north of Seattle, is home to 80,000 full-time residents. Many families on the island have lived and worked there for multiple generations, raising children and building significant homesteads.

2.      The tranquil life Whidbey Island residents have long enjoyed is being decimated by a persistent poison lurking in their water supply.

3.      The Naval Air Station Whidbey Island ("NASWI"), as well as the Naval Outlying Landing Field Coupeville ("NOLF"), are military installations on the island that have been in active use since World War II.

4.      Starting in the 1970s, as part of regular operations at NASWI and NOLF, military fire fighters put out fires, and conducted training exercises in preparation for fires, utilizing Aqueous Film Forming Foam ("AFFF"). AFFF is a specialized substance designed to handle petroleum-based fires.

5.      AFFF contains synthetic, toxic per- and polyfluoroalkyl substances collectively known as "PFAS."[1]   PFASs can travel long distances, move through soil, seep into groundwater, or be carried through air. PFASs do not degrade in a meaningful way, and therefore persist in the environment for decades.

6.      Defendants collectively designed, produced, and distributed AFFF with knowledge that it contained highly toxic and long lasting PFASs, which would inevitably reach

---

[1] "PFAS" includes but is not limited to: perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals, including but not limited to those that degrade to PFOA and/or PFOS, and including but not limited to C3-C-15 PFAS chemicals, such as perfluorohexanesulfonate (PFHxS), perfluorononanoate (PFNA), perfluorobutanesulfonate (PFBS), perfluorohexanoate (PFHxA), perfluoroheptanoate (PFHpA), perfluoroundecanoate (PFUnA), perfluorododecanoate (PFDoA), HFPA Dimer Acid (CAS # 13252-13-6/C3 Dimer Acid/P-08-508/FRD903/GX903/C3DA/GenX), and HFPA Dimer Acid Ammonium Salt (CAS# 62037-80-3/ammonium salt of C3 Dimer Acid/P-08- 509/FRD902/GX902/GenX).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

1  the water supply of and pose a significant health risk to humans that consume or have other

2  exposure to that water.

3      7.      As a result, significant portions of the water supply and soil on Whidbey Island

4  are contaminated with PFASs, exposing residents to significant health risks and devaluing their

5  lands.

6      8.      This class action is brought on behalf of Plaintiff Jackson individually, and on

7  behalf of all others similarly situated on Whidbey Island, for injunctive, equitable, and

8  declaratory relief, for injuries arising from the intentional, knowing, reckless and/or negligent

9  acts and/or omissions of Defendants in connection with ongoing contamination of Plaintiff's

10 and other class members' bodies with PFASs through the design, manufacturing, and sale of

11 AFFF, as well as the increasing damage caused to Class members' private property.

## JURISDICTION AND VENUE

13     9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2),

14 because (a) at least one Class member is a citizen of a different state than Defendants, (b) the

15 amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the

16 exceptions under that subsection apply to this action.

17     10.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because this

18 action is between citizens of different states. This Court has supplemental jurisdiction over the

19 state statutory and common law claims alleged herein pursuant to 28 U.S.C. § 1367

20 (supplemental jurisdiction over pendant state law claims).

21     11.     This Court has personal jurisdiction over Defendants because Defendants 3M

22 and Tyco are registered to, and in fact do, conduct business in Washington, each Defendant has

23 sufficient minimum contacts in Washington, and each Defendant has intentionally availed itself

24 of the benefits and protections of Washington's laws by participating in the markets within

25 Washington through the sale and provision of its products.

26

COMPLAINT - 3

12.     Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff is a resident of, and domiciled in, this District, Defendants conduct substantial business in this District, and a substantial part of the events giving rise to Plaintiff's claims alleged herein occurred in this District.

## PARTIES

13.     Plaintiff Krista Jackson is a resident of Island County, in the State of Washington, who owns and lives on real property located therein.

14.     Defendant The 3M Company is a Delaware corporation having its principal place of business located at 3M Center, St. Paul, Minnesota 55144. 3M conducts business throughout this District, the State of Washington, and the United States.

15.     Defendant Tyco Fire Products L.P., a successor in interest to The Ansul Company, is a Delaware limited liability partnership having its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Tyco conducts business throughout this District, the State of Washington, and the United States.

16.     Defendant Buckeye Fire Equipment Company is an Ohio corporation with its principal place of business located at 110 Kings Road, Mountain, North Carolina 28086. Buckeye conducts business throughout this District, the State of Washington, and the United States.

17.     Defendant Chemguard, Inc. is a Texas corporation having its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Chemguard conducts business throughout this District, the State of Washington, and the United States.

18.     Defendant National Foam, Inc. is a Delaware corporation, having a principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382. National Foam conducts business throughout this District, the State of Washington, and the United States.

COMPLAINT - 4

**COMMON FACTUAL ALLEGATIONS**

*A.*      *The Aqueous Film Forming Foam Industry*

19.      AFFF is a mixture of chemicals, including PFASs, used to put out petroleum-based fuel and other flammable liquid fires. AFFF lowers surface tension of the fuel, which starves a fire of its oxygen supply. While the fluorinated compounds in AFFF work well to extinguish fires, they are not biodegradable. These toxic chemicals persist in water and soil, and then accumulate in the bodies of animals and humans who come in contact with or consume them.

20.      Defendants 3M, Tyco, National Foam, Chemguard and Buckeye designed, manufactured, marketed, distributed, and sold AFFF knowing it contained toxic PFASs that were used at hundreds of military bases around the country, including NASWI and NOLF. As a result, PFASs have seeped into the water in a many-mile wide area around those bases creating what the Center for Disease Control's ("CDC") National Center for Environmental Health describes as a "seminal public health challenge." [2]

21.      3M holds a patent on the "ECF Process" used to create AFFF. As a result of its patent, 3M is the only company that manufactured AFFF containing PFOS. In 1947, 3M first produced PFOA via its patented ECF Process and began selling its PFOA to other chemical companies in 1951.

22.      PFOA has many uses, including use in AFFF. Defendants Tyco, Buckeye, National Foam, and Chemguard manufactured, marketed, distributed, and sold AFFF using PFOA that they either produced themselves or purchased from third parties. Defendants sold AFFF to customers, including the Navy, for use in fighting fires, including at NASWI and NOLF.

---

[2] Christopher Knaus, *Toxic Firefighting Chemicals 'The Most Seminal Public Health Challenge'*, THE GUARDIAN, (Oct. 18, 2017, 12:52 a.m.), https://www.theguardian.com/australia-news/2017/oct/18/toxic-firefighting-chemicals-the-most-seminal-public-health-challenge.

COMPLAINT - 5

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

23.     PFOA, like PFOS, is toxic, persists in the environment, and bioaccumulates in humans and animals. As early as the 1960s, 3M knew that PFOS and PFOA do not degrade in the environment. 3M studies from the 1970s concluded that PFASs were even more toxic than previously believed, but intentionally concealed this information from the public. Similarly, Tyco undertook a study and investigation in and around 1977 on its AFFF-containing PFASs and also became aware of its persistence in the environment, particularly in water, its permeability and movement through air, soil, and into groundwater, its toxicity, and its bioaccumulation in the blood stream, kidney, liver, and other organs and tissues of humans and animals.[3] Because of its toxicity, manufacturers, including Defendants, made voluntary commitments to the EPA to reduce the content and facility emissions of PFOA and related chemicals by 95% no later than 2010.[4]

24.     Rather than abandon this line of dangerous chemicals, Defendants have elected to instead take a page out of drug dealers' playbooks. In the same way that designer drugs are manufactured to skirt drug laws, some formulations of PFASs are being discontinued in favor of new and slightly different formulations of the same toxic compounds to replace them.

25.     Though marketed as environmentally responsible, this new foam contains PFAS chemicals based on a lower number of atoms in the carbon chains (*e.g.*, six rather than eight).

---

[3] Human studies show associations between increased PFAS levels in blood and an increased risk of several health conditions, including high cholesterol levels, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a pregnancy complication that includes high blood pressure), and kidney and testicular cancer. These injuries can arise months or years after exposure to PFASs.

[4] Additionally, Washington was the first state to ban the sale of AFFF containing PFASs. State Senate Bill 6413, which took effect on June 7, 2018, reduced as of July 1, 2018 the use of certain toxic PFAS chemicals in firefighting activities by prohibiting the manufacture, distribution, and sale of AFFF that has PFASs intentionally added beginning July 1, 2020. Wash. Rev. Code § 70.75A.020 (2018).  A manufacturer of Class B AFFF is required to provide written notice to persons selling the manufacturer's products no less than one year prior to the prohibition. Wash. Rev. Code § 70.75A.040 (2018).  Such a manufacturer must also recall and reimburse the retailer or any purchaser for the product. *Id.* Sellers of fire-fighting personal protective equipment ("PPE") containing PFAS are also required to have notified purchasers that the equipment contains PFAS by July 1, 2018. Wash. Rev. Code § 70.75A.030 (2018). The person or manufacturer selling firefighting PPE and the purchaser must keep the notice on file for at least three years. *Id.* A violation of the statute subjects sellers to a civil penalty of up to $5,000 for a first offense and up to $10,000 for subsequent violations. Wash. Rev. Code § 70.75A.060 (2018).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

While some of these shorter compounds exit the human body more quickly than their predecessors, they still accumulate in blood, organs, and tissues. And, like the longer chain compounds, these shorter molecules persist indefinitely in the environment.

26.     As with PFOS and PFOA, these shorter chain PFAS molecules accumulate in people's bodies and the natural environment, posing threats to both. Some of the studies showing the dangers of these persistent chemicals come from the manufacturers themselves.

27.     These dangers led the Minnesota Attorney General to file a lawsuit in 2010 charging that 3M polluted groundwater with PFAS compounds, and "knew or should have known" that these chemicals harm human health and the environment, and "result in injury, destruction, and loss of natural resources of the State." Complaint at ¶ 18, *State ex. rel. Swanson v. 3M Co.*, 2013 WL 3284285 (Minn. Ct. App. July 1, 2013) (No. A-12-1856), *aff'd in part, rev'd in part*, 845 N.W.2d 808 (Minn. 2014).

28.     The Minnesota complaint alleges that 3M "acted with a deliberate disregard for the high risk of injury to the citizens and wildlife of Minnesota." *Id*. On February 20, 2018, Minnesota settled its lawsuit against 3M for $850 million. This lawsuit revealed the extraordinary lengths 3M is willing to go to cover up the vast dangers it knows PFASs pose, even as it is spreading around the country.

### B.     Health Effects of PFAS Exposure

29.     PFAS are a class of man-made chemicals that are not found naturally in the environment. Molecules in all PFAS chemicals contain carbon and fluorine atoms and some also include oxygen, hydrogen, sulfur or nitrogen atoms. PFAS chemical molecules are differentiated from each other by chain length, or the number of carbon atoms in the molecule.

30.     PFOS and PFOA are two of the most studied PFASs.[5]  PFOS and PFOA persist in the human body and are eliminated slowly. PFOS and PFOA have been discovered in human

---

[5] Class B AFFF containing PFASs have been used since the 1970s for vapor suppression, firefighting, and firefighting training at military and civilian airports, refineries, bulk storage terminals, and other facilities handling large volumes of flammable liquid petroleum-based fuel or natural gas. PFAS chemicals are used in AFFF products because of their ability to spread remarkably fast. The final fiscal year 2018 defense authorization bill

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

1  blood and tissues, and at lower levels in urine, breast milk, and in umbilical cord blood. PFOS,

2  PFOA, and other PFAS pose adverse effects for human health given their toxicity, mobility,

3  and bioaccumulation potential. The major ways humans are exposed to PFAS are drinking

4  contaminated water, absorbing it through the skin, and ingesting food contaminated with PFAS

5  such as certain types of fish and shellfish (such as the shellfish being farmed in Penn Cove).

6        31.    PFASs are extremely persistent in the environment and resistant to typical

7  environmental degradation processes due to their chain lengths. Long chain PFASs

8  bioaccumulate in animals and can enter the human food chain.

9        32.    Human observational (epidemiological) studies have associated PFOA and/or

10  PFOS with kidney and testicular cancer, decreased birth weight, thyroid disease, decreased

11  sperm quality, high cholesterol, pregnancy-induced hypertension, asthma, ulcerative colitis, and

12  decreased response to vaccination. Exposure to these chemicals is especially harmful during

13  critical windows of fetal development.

14        33.    Studies in humans with PFAS exposure have shown that certain PFASs may:

15        a.    affect growth, learning, and behavior of infants and older children;

16        b.    lower a woman's chance of getting pregnant;

17        c.    interfere with the body's natural hormones;

18        d.    increase cholesterol levels;

19        e.    affect the immune system; and

20        f.    increase the risk of cancer.

21

22

23

24  requires the CDC to conduct a health study of the impact PFASs have on not less than eight current or former
   military installations where the chemicals have contaminated drinking water. National Defense Authorization Act
25  for Fiscal Year 2018, Pub. L. No. 115-91, 131 Stat. 1350-51, 68-69 (2017). The bill included a paltry $42 million
   to remediate PFASs contamination from dozens of military bases, as well as devoting $7 million toward the
26  Investing in Testing Act which authorizes the CDC to conduct a study into the long-term health effects of PFAS
   exposure.

COMPLAINT - 8

34.     Risk assessments and reviews have concluded that PFOA is "likely to be carcinogenic in humans."[6]

35.     Animal studies, which better match actual likely exposure levels, have identified even more pernicious consequences. One or more of these chemicals have been shown to cause liver and thyroid toxicity, testicular, thyroid, and liver tumors, immune suppression, and obesity. Additional consequences are developmental toxicity, including altered mammary gland development, reduced ossification, accelerated puberty, reabsorption of the developing fetus, and mortality and delayed development of offspring.

36.     From 2005-2013, a large epidemiological study known as the C8 Health Project was conducted after drinking water in six water districts across two states was contaminated by the release of PFOA. The C8 Health Project was created, authorized, and funded as part of the settlement agreement reached in the case of *Leach v. E.I Du Pont de Nemours & Co. Leach Settlement Agreement*, 2002 WL 1270121 (W. Va. Cir. Ct. April 10, 2012) (No. 01-C-608), MDL ECF No. 820-9.

37.     The C8 Health Project analyzed the effects of PFAS air and water contamination in parts of the Ohio River and ground water. The study included 69,030 persons over the age of 18. The C8 Health Project Science Panel analyzed study data and found links between elevated PFASs blood levels and high cholesterol (hypercholesteremia), ulcerative colitis, thyroid function, testicular cancer, kidney cancer, preeclampsia, elevated blood pressure during pregnancy, and other potential health concerns.

C.     *The Contamination of Whidbey Island by Defendants' Products*

38.     NASWI and NOLF maintain active and several historical fire training sites at which the Navy has conducted or conducts firefighting training exercises from the 1970s to

---

[6] Epidemiologic Evidence on the Health Effects of Perfluorooctanoic Acid (PFOA), ENVIRONMENTAL HEALTH PERSPECTIVES, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2920088/ (last visited January 24, 2019).

COMPLAINT - 9

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

today. As part of these exercises, NAWSI used AFFF and other materials containing PFASs, which have been linked to the contamination of surface and groundwater with PFOA and PFOS throughout the country.

39.     For decades, the Navy stored and used AFFF at NASWI and NOLF in firefighting training which released PFASs into the environment, air, soil, surface water, and groundwater. During the relevant time period, NASWI stored and used thousands of gallons of AFFF concentrate containing PFASs which were designed, manufactured, marketed, distributed, and sold by each of the Defendants. The AFFF was expected to, and did, reach NASWI without substantial change in the condition in which it was sold to the Navy.

40.     The descriptive labels and data sheets for the AFFF utilized at NASWI and NOLF did not reasonably nor adequately describe the hazards of AFFF. Defendants knew or should have known of these hazards when the product was distributed. Defendants manufactured, marketed, distributed, and sold the AFFF to NASWI and NOLF, knowing that the PFASs contained in the AFFF presented an unreasonable risk to human health and the environment, and were inherently dangerous.

41.     The communities of Oak Harbor and Coupeville are located near NAWSI and NOLF, respectively, and have widespread contamination in their water supply as a result of the AFFF manufactured by Defendants.

42.     The Coupeville water system serves over 2,000 customers both inside the town limits and out of town through 11.6 miles of water main lines within the town, and through 13.2 miles of water mains located out of town.

43.     Residents of these communities and other areas of Whidbey Island receive their potable water either from private individual and community wells, or from their local town or municipal water provider. Water from Coupeville comes from two wells located in town and the Fort Casey well field located out of town. Fort Casey is the primary source of water, and the in-town wells are used during the summer months when the demand is greatest. Several of

COMPLAINT - 10

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

Coupeville's wells and the post-treatment distribution point at the Fort Casey Treatment Plant have regularly tested positive for elevated levels of PFAS, including without limitation PFOA, PFBS, PFHxA, and PFHxS.

44.    Water samples taken by the Navy on March 23, 2018, and validated on October 5, 2018, indicate drinking water contaminated with elevated PFAS levels at: (a) the post treatment distribution point for the Coupeville Fort Casey Treatment Plant (PFAS levels over 106 parts per trillion); (b) Well 108, also known as the Keystone Hill Well (PFAS levels over 170 parts per trillion); and (c) Well 287 (PFAS levels over 82 parts per trillion). These levels far exceed the minimum risk guideline levels for PFASs recommended by the Environmental Protection Agency and Agency for Toxic Substances and Disease Registry ("ATSDR").[7] Those wells provide water to the Town of Coupeville, including patients at Whidbey General Hospital, approximately 1,000 primary and high school students, and the countless tourists who visit Coupeville and Whidbey Island every year.

45.    In October 2018, the Navy discovered PFASs in Whidbey Island's surface waters following routine storm water drain maintenance at NASWI. During the investigation, Navy officials reportedly found the chemicals in Clover Valley Creek, which runs along NASWI and into Dugualla Bay. Test results showed PFASs were leaving NASWI via the creek at levels of 172 parts per trillion at the installation's eastern boundary and 149 parts per trillion near the inlet to Dugualla Bay.

46.    In or around May 2017, the Navy notified Plaintiff, and others, of its verified testing results stating that their drinking water was contaminated with PFAS. By this time, several studies and assessments conducted by the Navy in conjunction with CH2M Hill, the EPA Region 10, the ATSDR Region 10, the Washington State Department of Ecology, the Washington State Department of Health, and Island County Public Health confirmed the

---

[7] *See* Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 101, 33250 (May 25, 2016) (establishing guidelines of 70 ppt for PFOA and PRFOS); *see also* Toxicological Profile for Perfluoroalkyls Draft for Public Comment, 83 Fed. Reg. 120, 28849 (June 20, 2018) (establishing stricter guidelines of 11 ppt for PFOA and 7 ppt for PFOS).

COMPLAINT - 11

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

1   existence of widespread PFAS contamination of the Island's water resources, including without

2   limitation areas in and around the City of Oak Harbor and Coupeville. The Navy study

3   concluded that decades of use, storage, and disposal of AFFF containing PFASs at NASWI and

4   NOLF caused the contamination of groundwater in the contaminated areas.[8]

5        47.      In fact, a summary report prepared by the Navy dated November 2016 was

6   released which reported that PFASs were detected in groundwater samples taken from, without

7   limitation, monitoring wells MW31-7A and MW31-9A at NASWI Area 31. PFOA

8   concentrations in monitoring wells MW31-7A and MW31-9A were measured at 58.5 µg/L

9   (58,500 ppt) and 26.1 µg/L (26,100 ppt), respectively. PFOS concentrations in monitoring

10  wells MW31-7A and MW31-9A were measured at 0.422 µg/L (422 ppt) and 2.37 µg/L (2,370

11  ppt), respectively.

12       48.      Regulatory investigations have concluded that the basis for this widespread

13  contamination of the Island's ground water is decades of use, storage, and disposal of AFFF

14  containing PFASs manufactured and sold by Defendants at NASWI and NOLF.

15       49.      The release of large quantities of water in firefighting training activities

16  continues to further spread and exacerbate the contamination.[9]  Meanwhile, Coupeville's 2,000

17  water customers, including sensitive consumers such as schools attended by nearly a thousand

18  children and Whidbey General Hospital, drink the contaminated water. PFASs not only leak

19  and threaten more of Whidbey Island's water supplies, but are additionally discharged through

20  the groundwater, surface water runoff, creeks, and pump stations into the waters of the United

---

21  [8] Naval Facilities Engineering Command Northwest, *PFAS Groundwater and Drinking Water Investigation*,
22  (https://www navfac.navy mil/navfac_worldwide/pacific/fecs/northwest/about_us/northwest_documents/environm
    ental-restoration/pfas-groundwater-and-drinking-water-investigation.html (last visited February 5, 2019).

23  [9] Beginning July 1, 2018, the use of PFAS containing Class B firefighting foam for training is prohibited across
24  Washington. *See* Wash. Rev. Code § 70.75A *et seq.* (2018). At the federal level, the ATSDR health risk limit is
    seven (7) parts per trillion and the Environmental Protection Agency Lifetime Health Advisory limit is 70 parts per
    trillion. Toxicological Profile for Perfluoroalkyls Draft for Public Comment, 83 Fed. Reg. 120, 28849. Vermont
25  has a combined level of 20 ppt for PFOA and PFOS.  New Jersey has a maximum contaminant level of 14 ppt for
    PFOA. 50 N.J. Reg. 1939(a) (September 4, 2018). California has listed PFOA and PFOS on its Proposition 65 list
26  as a chemical known to cause reproductive toxicity under the Safe Drinking Water and Toxic Enforcement Act of
    1986.

COMPLAINT - 12

States, and ultimately into Penn Cove and Puget Sound, harming water quality and habitat, and in particular adversely impacting the robust commercial shellfish industry that calls Penn Cove home.

### D. *Medical Monitoring is Needed and Necessary*

50.    The hazardous substances to which Plaintiff and the Class have been exposed are known to cause serious illnesses, as described herein and including without limitation various forms of cancer. Persons such as Plaintiff and the Class who have been significantly exposed to the hazardous substances caused by Defendants' tortious conduct have a significantly increased risk of contracting one or more diseases as described herein, including but not limited to cancer.

51.    The exposure to which Plaintiff and the Class have been subjected make it reasonably necessary for them to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of their exposure. Monitoring procedures exist that make possible the early detection of the diseases and/or illnesses for which Plaintiff and the Class are at an increased risk.

52.    Early diagnosis and treatment for the cancers, diseases, and disorders caused by PFAS exposure is essential to detect and mitigate long-term health consequences in Plaintiff and the Class. Simple procedures including, but not limited to, blood tests, skin evaluations, scans, urine tests, and physical examinations are well-established and readily available.

53.    These measures are essential to preventing and/or mitigating long-term health consequences that will be borne by Plaintiff and the Class Members through no fault of their own due to Defendants' actions in exposing Plaintiff and the Class Members to dangerous chemicals and, in some cases, these measures are likely to prove life-saving.

54.    The requested tests, procedures, scans, and examinations are different from standard medical care, and will be specifically tailored to assess and monitor conditions that pertain to PFAS exposure. These tests, procedures, scans, and examination would not be

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

1  necessary in the absence of a known exposure to these chemicals. Further, these tests,

2  examinations, and procedures will need to occur more frequently than the normal

3  recommended schedule of examinations for a population that had not been exposed to these

4  levels of PFAS chemicals.

5  55.     The required testing is reasonably necessary and in accord with current medical

6  and scientific procedures. Plaintiff and the Class have no other adequate remedy at law, and

7  medical monitoring through the establishment of a medical monitoring fund is reasonably

8  necessary.

9      ***E.     Defendants' AFFF Containing PFAS is Commingled***

10  56.     Once AFFF containing PFASs, including without limitation PFOA and PFOS,

11  are released into the environment it is difficult to identify the specific company that

12  manufactured that particular AFFF. Environmental AFFF contamination comes from the

13  supplies of different Defendant manufacturers that have been mixed together even when used

14  or found in a single location such as a training area or retention pond.

15  57.     This is the case on Whidbey Island, where AFFF containing PFASs was used

16  and entered the environment and groundwater in several areas at NASWI and NOLF.  The

17  specific Defendants whose AFFF containing PFASs contributed to the contamination of a

18  specific water supply in different parts of the contaminated areas are not readily identifiable.

19  58.     The specific manufacturer, distributor, or seller of a particular batch of AFFF

20  containing PFASs that has contaminated Plaintiff's or the Class Members' blood, a water well,

21  surface water, groundwater, Coupeville's water system, or the environment may ultimately be

22  unidentifiable.  Plaintiff must therefore pursue all Defendants, jointly and severally, for any

23  indivisible harm and injuries which Defendants collectively caused Plaintiff and the Class

24  Members.

25  59.     Each Defendant participated in a statewide and national market for AFFF

26  containing PFASs during the Class Period. AFFF containing PFASs is fungible. It is difficult, if

COMPLAINT - 14

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

not impossible, to identify the exact Defendant who manufactured any particular AFFF containing PFASs found in Plaintiff's and the Class' blood and their property, and the environment, groundwater, surface water, and soil.

60.     Each Defendant participated in a common plan to commit the acts complained of herein.  Each Defendant acted tortiously in pursuit of a common plan to knowingly and intentionally manufacture, market, distribute, and sell toxic and dangerous AFFF containing PFASs.

61.     Defendants are jointly and several liable for manufacturing, distributing, and selling defective products into the stream of commerce as part of a concerted course of action and as a joint enterprise.

## PLAINTIFF'S EXPERIENCE

62.     Plaintiff Krista Jackson is a resident of, and property owner in, the Oak Harbor community area in Island County, Washington. Ms. Jackson acquired title to her property in 2004 and has continuously lived there from 1999 to the present.

63.     Plaintiff, like many other Class Members, receives water from a private community well located on her property which also serves several other neighboring families and that is contaminated by PFASs. The level of contamination of Plaintiff's and her neighbors' water has tested at triple to 13 times the minimum appreciable risk level for adverse health effects set by ATSDR.

64.     Plaintiff and her neighbors have regularly consumed, bathed in, washed with, and cooked with water containing PFASs and have been, and are being, significantly exposed to elevated levels of PFASs.

65.     PFASs have entered Plaintiff's property and home and accumulated in the pipes, faucets, showerheads, and appliances. PFASs have accumulated in surface water on her property through irrigation. As a result of exposure to PFASs, Plaintiff's property has declined in value.

COMPLAINT - 15

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

66.     Plaintiff has been exposed to elevated levels of PFASs from the contaminated water supply at triple the ATSDR minimum appreciable health risk level. As a result of her exposure to PFASs, Plaintiff has experienced bioaccumulation of PFASs in her blood which heightens the risk of developing serious adverse health conditions, including liver and immune system conditions, high cholesterol levels, changes in thyroid hormone, hypertension, ulcerative colitis, fertility issues, and kidney cancer.

## CLASS ACTION ALLEGATIONS

67.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all members of the "Property Damage Class," defined as:

### The Property Damage Class

> All individuals or entities who own real property within 20 miles of the service area of (1) the Town of Coupeville water supply; or (2) any private, individual, or community water well that tested positive for PFAS contamination.

Such persons are collectively referred to herein individually as a "Property Damage Class Member" and collectively as the "Property Damage Class."  The Property Damage Class can be readily ascertained by regulatory studies, census data and local property records.

68.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and all members of the "Medical Monitoring Class," defined as:

### The Medical Monitoring Class

> All individuals who are or were residents, or part-time residents, of Whidbey Island who, after 1970, consumed water from (1) the Town of Coupeville water supply; or (2) a water system or subsystems on Whidbey Island that test positive for PFAS contamination, including but not limited to individual or community water supply wells.

69.     The Classes described in this Complaint may be jointly referred to as the "Class" and proposed Members of the Classes may be jointly referred to as "Class Members." Excluded from the Class are: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors,

COMPLAINT - 16

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

70.     Plaintiff reserves the right to modify the class definitions as additional information is learned through discovery.

71.     Plaintiff is a member of the proposed Classes she seeks to represent. Plaintiff satisfies the numerosity, commonality, typicality, adequacy, and predominance prerequisites for suing as a representative party pursuant to Rule 23 of the Federal Rules of Civil Procedure.

72.     Numerosity. The exact number of proposed Class Members is currently not known, but is believed to consist of thousands of former or current property owners and individuals who have been exposed to and consumed PFASs, or suffered economic damage from PFAS contamination, making joinder of each individual Class Member impracticable.

73.     <u>Commonality</u>. Common questions of law and fact exist for the proposed Class' claims and predominate over questions affecting only individual Class Members. Common questions include, without limitation:

a.     Whether and to what extent Defendants contaminated Plaintiff's and the Class Members' water supply with PFASs;

b.     What acts of Defendants caused Plaintiff and the Class to be exposed to PFAS contaminated water;

c.     Whether Defendants knew or should have known exposure to PFASs could increase health risks;

d.     Whether Defendants made illegal or misleading representations regarding the health impacts of PFASs;

COMPLAINT - 17

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

e.      Whether Defendants suppressed information about the dangers of using products they manufactured, sold, and/or widely distributed;

f.      Whether Defendants failed to warn about the potential for harm and the dangers of using, products they manufactured, marketed, sold, and/or widely distributed;

g.      Whether Defendants knew or should have known that their AFFF contained persistent, stable, and mobile chemicals that were likely to contaminate groundwater;

h.      Whether Defendants acted with deliberate indifference to a known or obvious danger;

i.      Whether Defendants' actions or failure to act constituted gross negligence or recklessness;

j.      Whether PFAS contamination caused and continues to cause a continuous invasion of the property rights of Plaintiff and the Class such that their property values have or continue to decline in value;

k.      Whether PFAS contamination caused and continues to cause a continuous invasion of the property rights of Plaintiff and the Class such that it has substantially interfered with Plaintiff's and the Class' use and enjoyment of their property;

l.      Whether Defendants are liable to Plaintiff and the Class for their actions;

m.      Whether Plaintiff and Class Members are entitled to damages and other monetary and equitable relief, including but not limited to punitive damages, declaratory, and prohibitory and mandatory injunctive relief against Defendants; and

n.      What monitoring, limiting, and supervisory procedures and practices should Defendants be required to implement to ensure ongoing protection of each Class

COMPLAINT - 18

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

Member's rights and as part of any prohibitory and mandatory injunctive relief ordered by the Court.

74.     <u>Typicality</u>. Plaintiff's claims are typical of the claims of the proposed Class because, among other things, Plaintiffs and Class Members' legal claims all arise from Defendants' unlawful practices, and Plaintiff and Class Members sustained similar injuries, harm, and damages as a result of Defendants' uniform illegal conduct.

75.     <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Class. Her interests do not conflict with Class Members' interests and she has retained counsel competent and experienced in complex and class action litigation to vigorously prosecute this action on behalf of the Class. In addition to satisfying the prerequisites of FRCP 23(a), Plaintiff satisfies the requirements for maintaining a class action under FRCP 23(b)(2) and (3).

76.     Common questions of law and fact predominate over any questions affecting only individual Class Members and a Class action is superior to individual litigation because:

a.     The amount of damages available to an individual Plaintiff is insufficient to make litigation addressing Defendants' conduct economically feasible in the absence of the class action procedure;

b.     Individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

c.     The class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of the Plaintiff and the Classes)**

77.     Plaintiff and members of the Class incorporate by reference the foregoing allegations.

COMPLAINT - 19

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206 682.2992

78.     Defendants owed Plaintiff and members of the Class a duty to act reasonably, and exercise reasonable care, in designing, manufacturing, creating, marketing, selling, distributing, and/or labelling of AFFF containing PFASs, and not to sell into the marketplace inherently dangerous AFFF when it was imminent and certain that it would be released into the environment, including the local groundwater.

79.     Defendants knew or should have known: (a) exposure to PFASs was and is hazardous to the environment and to human health; (b) the manner in which they were manufacturing, creating, marketing, selling, distributing, and labelling AFFF containing PFASs was and is hazardous to human health through its potential for bioaccumulation in human blood, organs, and tissue which causes serious health effects, including cancer; (c) PFASs are highly soluble in water, highly mobile, extremely persistent in the environment, and highly likely to contaminate water supplies if released; (d) the manner in which they were manufacturing, marketing, and selling AFFF containing PFASs would result in the contamination of the Coupeville water system, as well as of private individual and community well drinking water supplies on Whidbey Island and the contaminated areas, because of the proximity thereof to NASWI and NOLF.

80.     Defendants manufactured, marketed, sold, distributed, and/or labelled their products: (a) with knowledge that AFFF containing toxic levels of PFASs would be: (1) used in firefighting exercises and situations at NASWI and NOLF and that as a result these toxic substances would be released into the environment and groundwater; and (2) stored in firefighting systems and tanks on Navy bases, including NASWI and NOLF, and that such systems and storage were used and maintained in such a manner that toxic PFASs would be released into the environment and groundwater; and (b) with knowledge of the dangerous and hazardous properties of AFFF containing PFASs and the manner in which AFFF containing these toxic substances would be used, stored, and maintained at NASWI and NOLF. It was foreseeable that AFFF containing PFASs would contaminate the surrounding environment,

COMPLAINT - 20

surface water, groundwater, waters of the United States, and drinking water supplies of Whidbey Island, Coupeville, and the contaminated areas as a result of their proximity to NASWI and NOLF.

81.      Defendants knew or should have known that safety precautions would be required to prevent the release of PFASs into the environment, surface water, groundwater, waters of the United States, and drinking water supplies surrounding NASWI and NOLF. As manufacturers, marketers, distributors, and sellers of AFFF containing PFASs, Defendants were best positioned to provide adequate instructions, proper labeling, and sufficient warnings about their PFAS containing AFFF products. The burden on Defendants to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF product and to guard against this foreseeable harm was minimal.

82.      Defendants had a duty to warn of the hazards associated with AFFF containing hazardous and dangerous levels of PFASs entering and poisoning the Whidbey Island environment, groundwater, and property of Plaintiff and members of the Classes. Considering the above factors regarding risk, foreseeability, social utility, burden of guarding against the harm, and the practical consequences of placing that burden on Defendants, Defendants owed a cognizable duty to Plaintiff and members of the Classes to not contaminate the Coupeville and private individual and/or private community well water supplies and the surrounding environment and groundwater with AFFF containing PFASs.

83.      Defendants had a duty to warn of the hazards associated with AFFF containing PFASs entering into and contaminating the environment, surface water, groundwater, drinking water supplies, and property of Plaintiff and members of the Classes. Defendants, as manufacturers, marketers, distributors, and sellers of AFFF owed Plaintiff and members of the Classes a cognizable duty to exercise reasonable care to ensure that AFFF was manufactured, marketed, distributed, and sold in such a manner as to ensure that the purchasers and users of AFFF were aware of the potential harm PFASs can cause to human health and the environment.

COMPLAINT - 21

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

Upon learning of the release of the PFAS contaminants, all Defendants owed Plaintiff and the Class a duty to warn and notify them and/or act reasonably before the contamination harmed and injured Plaintiff and the Class and their property in order minimize and mitigate the damage.

84.     Defendants breached their duty by allowing PFASs to be released into the Coupeville and private individual and community well drinking water supplies of Whidbey Island, the contaminated areas, and the property of Plaintiff and the Class, and through their failure to warn and notify users of AFFF of the danger that PFASs would enter into and poison the Whidbey Island environment, groundwater, and Plaintiff and the Class and their property.

85.     Defendants negligently, grossly negligently, and/or recklessly, breached their legal duties to Plaintiff and the Class, causing the contamination of the Coupeville and private individual and community well drinking water supplies in and around Whidbey Island, the contaminated areas, and the property of Plaintiff and the Class. Defendants failed to exercise even slight care, and their negligence was and is substantially and appreciably greater than ordinary negligence.

86.     Defendants also breached their duties owed to the Plaintiff and the Class by failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, remediate, mitigate, or remedy any contamination after it occurred. Defendants' failure to notify Plaintiff and the Class in a timely manner of the PFAS contamination of the Coupeville and private individual and community well drinking water supplies, the environment, and the property of Plaintiff and the Class constitutes additional breaches of the duties that Defendants owed Plaintiff and the Class.

87.     Defendants' breaches of their duties were direct and proximate causes of the harm to Plaintiff and the Class, and their injuries, damages, and the imminent, substantial, and impending harm to their health and property. Defendants' breaches of their duties caused the drinking water in both the Coupeville and private individual and community well water

COMPLAINT - 22

1    supplies, the Whidbey Island environment, and the property of Plaintiff and the Class to

2    become contaminated with unsafe and dangerous levels of PFASs.

3         88.    As a direct result of Defendants' breach of their duty to timely notify the

4    community and act reasonably in warning of the presence of PFASs in AFFF, Plaintiff and the

5    Class were delayed from undertaking effective and immediate remedial measures. Plaintiff and

6    the Class have expended and/or will be forced to expend significant resources to test, monitor,

7    and remediate the poisonous effects of Defendants' negligence and/or gross negligence for

8    many years. Plaintiff and the Class suffered foreseeable harm, injuries, and damages as a

9    proximate result of Defendants' negligent and/or grossly negligent breach of their duties as set

10   forth above. At the time Defendants breached their duties to Plaintiff and the Class,

11   Defendants' acts and/or failures to act posed recognizable and foreseeable risks of apparent

12   harm, injury, damage, and danger to Plaintiff and the Class, entitling them to be protected

13   against Defendants' actions and/or inactions.

14        89.    Plaintiff and members of the Classes have been significantly exposed to a

15   proven hazardous substance through the negligent and/or grossly negligent actions of

16   Defendants. As a proximate result of exposure, Plaintiff and members of the Classes suffer

17   from a significantly increased risk of contracting one or more serious latent diseases. That

18   increased risk makes periodic diagnostic medical examinations reasonably necessary.

19   Monitoring and testing procedures exist which make the early detection and treatment of these

20   diseases possible and beneficial.

21        90.    As described more fully herein, exposure to AFFF containing PFASs leads to

22   bioaccumulation of PFOA and PFOS in human blood, organs, and tissue thereby seriously

23   increasing the risk of contracting numerous diseases. Medical tests currently exist that can

24   determine the level of PFASs in the blood. Exposure to and bioaccumulation of PFASs

25   significantly increases the risk of contracting a serious medical condition. Accordingly,

26   periodic medical examinations to detect latent diseases are both reasonable and necessary. A

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

thorough medical monitoring plan, following common and accepted medical practices, can and should be developed for the Plaintiff and members of the Medical Monitoring Class to assist in the early detection and beneficial treatment of the diseases that can develop as a result of exposure to PFASs.

91.     Neither Plaintiff nor other members of the Classes contributed to the unlawful conduct set forth herein, nor did they contribute to Defendants' unlawful, unfair, and deceptive practices, nor to the insufficient measures to provide a safe product and to safeguard the health and property rights of Plaintiff and members of the Classes.

92.     Plaintiff and members of the Classes seek compensatory damages with pre-and-post judgment interest, the costs of suit, attorneys' fees, and other and further relief as this Court deems just and proper, in an amount to be determined at trial, resulting from the harm, damage, and injuries to their persons and property sufficient to compensate them for such harm and losses sustained, and to restore them to their original position, including but not limited to: (a) the difference between the current value of their properties and such value if the harm had not been done; (b) the cost of repair or restoration; (c) (c) injuries to persons; (d) the need for and development of a thorough medical monitoring plan, following common and accepted medical practices as an element of damages; and (e) actual, consequential, and nominal damages, flowing from the negligence and/or gross negligence which are the natural and proximate result of Defendants' conduct.

**SECOND CAUSE OF ACTION**
**Private Nuisance**
**(On Behalf of the Plaintiff and the Property Damage Class)**

93.     Plaintiff and the Property Damage Class Members incorporate by reference the foregoing allegations.

94.     Under RCW 7.48.010, an actionable nuisance includes, among other things, "whatever is injurious to health or indecent or offensive to the senses . . . so as to essentially interfere with the comfortable enjoyment of the life and property." Nuisance includes activities

COMPLAINT - 24

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1 that "annoy[], injure[] or endanger the comfort, repose, health or safety of others . . . or in any
2 way render[] other persons insecure in life, or in the use of property." RCW 7.48.120.

3     95.     Under RCW 7.48.150, a private nuisance is "[e]very nuisance not included in
4 the definition of [public nuisance in] RCW 7.48.130." "A public nuisance is one which affects
5 equally the rights of an entire community or neighborhood, although the extent of the damage
6 may be unequal." RCW 7.48.130.

7     96.     Plaintiff and the Property Damage Class are owners of real property with the
8 right of possession. Defendants' acts and/or failures to act as set forth herein were affirmative,
9 voluntary, and intentional. These acts were performed in reckless disregard of the potential for
10 PFASs to be disbursed through the water and onto the land and property of Plaintiff and the
11 Property Damage Class. Defendants knew, or should have known, that large amounts of PFASs
12 could and would enter onto and into the properties of Plaintiff and the Property Damage Class
13 as it has.

14     97.     Defendants' negligent, reckless, willful, wanton, and/or intentional acts and
15 failures to act caused PFASs to contaminate the drinking water and property near NASWI and
16 NOLF which injured, harmed and unreasonably interfered with the use and enjoyment of
17 Plaintiff's and the Property Damage Class' property. The potential danger from the
18 contamination of drinking water, soil, and improvements at their residences has caused Plaintiff
19 and the Property Damage Class significant and unreasonable inconvenience and expense and
20 has substantially interfered with the use of their properties such that it is offensive and has
21 caused significant harm, injury, inconvenience, and annoyance.

22     98.     Accordingly, Plaintiff and the Property Damage Class seek damages from
23 Defendants resulting from injury and harm to their persons and property in a sufficient amount
24 to compensate them and to restore Plaintiff and the Property Damage Class to their original
25 position, including but not limited to: (a) the difference between the current value of their
26 properties and the value if the harm had not been done; (b) the cost of repair or restoration; (c)

COMPLAINT - 25

the value of the use of the continuous nuisance; and (d) actual, consequential, and nominal damages from the nuisance proximately caused by Defendants, in an amount to be proved at trial.

**THIRD CAUSE OF ACTION**
**Product Liability - Failure to Warn**
**(On Behalf of the Plaintiff and the Classes)**

99.     Plaintiff and members of the Classes incorporate by reference the foregoing allegations.

100.     Defendants knew or should have known: (a) exposure to PFASs was hazardous to the environment and to human health; (b) the manner in which they were manufacturing, marketing, distributing, and selling AFFF containing PFASs was hazardous to human health and the environment; and (c) the manner in which they were manufacturing, marketing, distributing, and selling AFFF containing PFASs would result in the contamination of the Coupeville and private individual and community water supplies and Plaintiff's and the members of the Classes' bodies and property as a result of their proximity to NASWI and NOLF.

101.     Defendants had a duty to warn of the hazards associated with AFFF containing PFASs entering and poisoning the environment, water supplies, groundwater, and the bodies and property of Plaintiff and members of the Classes because they knew of the dangerous, hazardous, toxic, and poisonous properties of AFFF.

102.     Defendants failed to provide sufficient warning to purchasers that the use of their AFFF products would cause PFAS to be released into the environment, water supplies, surface water, groundwater, and bodies and property of Plaintiff and members of the Classes and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the bodies, organs, and tissues of Plaintiff and the Classes thereby increasing their risk of developing numerous diseases as set forth herein, along with extensive property damage.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

103.    Adequate instructions and warnings on the AFFF containing PFASs products could have reduced or avoided these foreseeable risks of harm and injury to Plaintiff and members of the Classes and their properties. If Defendants provided adequate warnings: (a) Plaintiff and the Classes could have and would have taken measures to avoid or lessen their exposure (*e.g.*, choosing not to live in the contaminated area); and (b) end users and governments could have taken steps to reduce or prevent the release of PFASs into the environment, water supplies, surface water, groundwater, and bodies and property of Plaintiff and the Classes. Defendants' failure to warn was a direct and proximate cause of the environmental and health impacts from PFASs that came from the use, storage, and disposal of AFFF containing PFASs at NASWI and NOLF. Crucially, Defendants' failure to provide adequate and sufficient warnings for the AFFF containing PFASs they manufactured, marketed, distributed, and sold renders the AFFF a defective product.

104.    Defendants were negligent in their failure to provide Plaintiff and the members of the Classes with adequate warnings or instruction that the use of their AFFF products would cause PFAS to be released into the environment, water supplies, surface water, groundwater, and bodies and property of Plaintiff and members of the Classes. As a result of Defendants' conduct and the resulting contamination: (a) the value and marketability of the property of Plaintiff and the Property Damage Class has been and will continue to be diminished; (b) Plaintiff and the Property Damage Class have suffered the cost of remediation of their properties and or mitigation systems for those properties, and the cost of alternative water; (c) Plaintiff and the Property Damage Class have lost use and enjoyment of their properties, and have suffered annoyance, discomfort, and inconvenience as a consequence of the contamination of their properties by Defendants; (d) Plaintiff and the Medical Monitoring Class have been injured by exposure to PFASs because exposure has significantly increased their risk of developing the illnesses described herein and/or actually to develop these illnesses.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

105.   Defendants' negligent failure to warn directly and proximately caused the harm to and damages suffered by Plaintiff and the members of the Classes.

**FOURTH CAUSE OF ACTION**
**Product Liability - Defective Design**
**(On Behalf of the Plaintiff and the Classes)**

106.   Plaintiff and members of the Classes incorporate by reference the foregoing allegations.

107.   Defendants knew or should have known: (a) exposure to PFASs is hazardous to the environment and to human health; (b) the manner in which they were manufacturing, marketing, distributing, and selling AFFF containing PFASs was hazardous to human health and the environment; and (c) the manner in which they were manufacturing, marketing, distributing, and selling AFFF containing PFASs could and would result in the contamination of the Coupeville and private individual and community water supplies and Plaintiff and members of the Classes' bodies and property because of the proximity to NASWI and NOLF.

108.   Knowing of the dangerous and hazardous properties of the AFFF containing PFASs, Defendants could have manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF that did not contain hazardous, toxic, and poisonous PFASs. These alternative designs and formulations were already available, practical, and technologically feasible. The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to persons and property caused by the Defendants' manufacture, marketing, distribution, and sale of AFFF containing hazardous, toxic, and poisonous PFASs.

109.   The AFFF containing PFASs that was manufactured, marketed, distributed, and sold by the Defendants was so hazardous, toxic, poisonous, and dangerous to human health and the environment that the act of designing, formulating, manufacturing, marketing, distributing, and selling this AFFF was unreasonably dangerous under the circumstances.

COMPLAINT - 28

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

110.    The AFFF designed, formulated, manufactured, marketed, distributed, and sold by Defendants was defectively designed and the foreseeable risk of harm could and would have been reduced or eliminated by the adoption of a reasonable alternative design that was not unreasonably dangerous. Defendants' defective design and formulation of AFFF was a direct and proximate cause of the dangerous, toxic, and poisonous environmental and health impacts from PFASs that came and continues to come from the past and continuing use and storage of AFFF containing PFASs at NASWI and NOLF.

111.    Defendants' defective design and formulation of AFFF containing PFASs caused the contamination described herein resulting in a diminution in the value and marketability of the Plaintiff's and the Property Damage Class' property which will continue to be diminished. As a direct result of the harm and injury caused by Defendants' defective design and the contamination described herein, Plaintiff and the Class Members have:  (a) been damaged by the cost of remediation and mitigation of the contamination of their properties and the cost of alternative water; (b) lost use and enjoyment of their properties and have suffered discomfort, inconvenience, and annoyance; and (c) been exposed to PFAS and other toxic substances that has significantly increased their risk of developing the diseases and illnesses described herein and/or caused them to actually develop illnesses associated with such exposure.

112.    Defendants' negligent failure to design a reasonably safe product directly and proximately caused the harm to and damages suffered by Plaintiff and the members of the Classes.

**FIFTH CAUSE OF ACTION**
**Medical Monitoring**
**(On Behalf of the Plaintiff and the Medical Monitoring Class)**

113.    Plaintiff and the Medical Monitoring Class incorporate by reference the foregoing allegations.

COMPLAINT - 29

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

114.     Plaintiff and the Medical Monitoring Class have accumulated PFASs from Defendants' AFFF in their blood and body and have an increased risk of developing the diseases, illnesses, and adverse health conditions set forth herein. As a result, they have suffered and sustained a present concrete injury-in-fact constituting standing for an independent claim or cause of action (and also as an element of damages) for medical monitoring associated with Plaintiff's and Medical Monitoring Class's other claims, and for those Class Members who have actually developed the diseases and conditions resulting from exposure to Defendants' PFASs containing AFFF.

115.     Plaintiff and the Medical Monitoring Class have an increased risk of developing and contracting serious latent diseases and health conditions as set forth herein that are medically cognizable: (a) from a significant exposure to a proven hazardous substance with a proven or probable causal link to a human disease; (b) proximately caused by the Defendants' negligence or intentional acts; and (c) that creates a significantly increased risk to Plaintiff and the Medical Monitoring Class who have been actually exposed to Defendants' AFFF containing PFASs.

116.     Plaintiff's and the Medical Monitoring Class's increased risk of latent diseases and health conditions makes periodic diagnostic medical examinations reasonably necessary. This monitoring procedure exists and makes the early detection and treatment of these PFAS related diseases possible and beneficial. The prescribed monitoring is different from that normally recommended in the absence of exposure and is reasonably necessary according to contemporary scientific principles. A treatment exists that makes the early detection of these diseases beneficial.

117.     Defendants knew or should have known that the manner in which they were manufacturing, marketing, distributing, and selling AFFF containing PFASs would result in the contamination of the municipal, community, and private individual and community well

COMPLAINT - 30

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

1  drinking water supplies of Plaintiff and the Medical Monitoring Class as a result of their

2  residence's proximity to the contaminated areas, NASWI, and NOLF.

3       118.    Defendants knew or should have known that exposing humans to PFAS

4  contamination would be hazardous to human health and the environment. Plaintiff and the

5  Medical Monitoring Class have been exposed to PFASs and potentially other toxic substances

6  that resulted from the use, storage, and discharge of Defendants' AFFF at NASWI and NOLF.

7       119.    As further set forth herein, exposure to PFASs leads to the bioaccumulation of

8  these toxic, dangerous, hazardous, and poisonous chemicals in the blood, seriously increasing

9  the risk of contracting numerous diseases. Medical tests currently exist that can determine the

10  level of the PFAS related contaminates in the blood and organs of the body.

11       120.    Because exposure to and bioaccumulation of PFASs significantly increases the

12  risk of contracting one or more serious medical conditions, thorough, periodic, and regular

13  medical monitoring and examinations following common and accepted medical practices can

14  and should be developed for the Plaintiff and the Medical Monitoring Class for the early

15  detection and beneficial treatment of the serious latent diseases that can develop as a result of

16  exposure to PFASs released and discharged from Defendants' toxic, hazardous, dangerous, and

17  poisonous AFFF.

18                          **SIXTH CAUSE OF ACTION**
                                   **Trespass**
19            **(On Behalf of the Plaintiff and the Property Damage Class)**

20       121.    Plaintiff and the Property Damage Class Members incorporate by reference the

21  foregoing allegations.

22       122.    Plaintiff and the Property Damage Class own and possess their drinking water

23  well systems that extract groundwater in Whidbey Island. Plaintiff and the Property Damage

24  Class actually and actively exercise their rights to appropriate and use groundwater drawn from

25  their wells. Neither Plaintiff nor any Property Damage Class Member gave any Defendant

26  permission to cause PFASs to enter their groundwater wells. Defendants' acts and failures to

COMPLAINT - 31

1  act caused PFAS contaminants to enter upon Plaintiff's and the Property Damage Class

2  Members' property.

3       123.    Defendants manufactured, promoted, marketed, distributed, and sold AFFF

4  containing PFASs, which Defendants knew or reasonably should have known would be

5  discharged and release toxic PFASs, PFOA, and PFOS into the ground and intrude upon,

6  contaminate, and damage Plaintiff's and Property Damage Class Members' persons and

7  possessory property interests. Defendants' willful conduct directly resulted in the placement of

8  its products, AFFF containing PFASs, including without limitation PFOA and PFOS, on and in

9  property owned by Plaintiff and the Property Damage Class Members without permission or

10 right of entry.

11      124.    Defendants knew or should have reasonably known, without limitation: (a) their

12 acts and failures to act would cause injury and damage, including PFAS contamination of the

13 private and public groundwater supply; (b) their deliberate acts and failures to act would and in

14 fact did release PFAS contaminants which were substantially certain to invade the water and

15 properties of Plaintiff and the Property Damage Class; (c) PFAS contamination would migrate

16 into Plaintiff's and the Property Damage Class' groundwater wells and drinking water; (d)

17 PFASs have a propensity to contaminate groundwater aquifers when released into the

18 environment; (e) PFASs are mobile and persistent contaminants which migrate, drift, and move

19 substantial distances within groundwater aquifers; and (f) PFASs are toxic and hazardous to

20 water systems and human health.

21      125.    Each Defendant is a substantial factor in bringing about the contamination of

22 Plaintiff's and the Property Damage Class' wells, and each Defendant aided and abetted the

23 trespasses and is jointly and severally responsible for the injuries and damage caused to

24 Plaintiff and the Property Damage Class. Defendants' actions resulted in PFAS contaminants

25 entering into Plaintiff's and Property Damage Class' persons and properties, damage to their

26 property, and substantially increased the risk of developing numerous diseases, disorders, and

COMPLAINT - 32

1   illnesses, as described herein. Defendants' actions were done with actual malice or wanton,

2   reckless or willful disregard for Plaintiff's safety, rights, and/or property. Defendants' actions

3   and/or omissions were the proximate cause of Plaintiff's and the Property Damage Class

4   Members' injuries.

5          126.   As a direct and proximate result of the Defendants' conduct, acts, and/or failures

6   to act:  (a) toxic PFASs have entered the persons, wells, and property of Plaintiff and the

7   Property Damage Class Members; (b) Plaintiff and the Property Damage Class Members have

8   been placed at a substantially increased risk for developing numerous diseases, disorders, and

9   illnesses, as described herein; and (c) Plaintiff and the Property Damage Class Members have

10  suffered and sustained actual injuries and damages related to the PFAS contamination of their

11  wells, persons, and property, damage to their property, and consequential damages in an

12  amount to be proved at trial. Defendants are jointly and severally liable for all such damages,

13  and Plaintiff and the Property Damage Class Members are entitled to recover all such damages

14  and other relief, including the value of the use of the continuous trespass, as set forth herein.

15         127.   As a result of their intentional and unreasonable actions or failures to act, and

16  their actions while knowing or having reason to know that they were unauthorized to act,

17  Defendants have wrongfully caused waste and injury to Plaintiff's and the Property Damage

18  Class Members' land. As a result, they are also liable for treble the amount of damages caused

19  by the waste and injury, as well as costs and attorneys' fees under RCW 4.24.630.

20                       **SEVENTH CAUSE OF ACTION**
                **Violation of Washington Consumer Protection Act, RCW 19.86**
21                  **(On Behalf of the Plaintiff and the Classes)**

22         128.   Plaintiff and members of the Classes incorporate by reference the foregoing

23  allegations.

24         129.   The Washington Consumer Protection Act ("CPA") is codified at RCW 19.86 *et*

25  *seq.*

26

COMPLAINT - 33

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

130.    The CPA prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or in commerce. Defendants have engaged in unfair and deceptive acts and practices occurring in the conduct of their trade and in commerce as set forth herein. Defendants' acts and practices affect the public interest. Defendants' unfair and deceptive acts and practices were the proximate cause of the injuries to Plaintiff and members of the Classes set forth herein.

131.    Defendants' deceptive and unfair acts and practices occurred in trade and commerce and were likely to mislead a reasonable or ordinary person and have the tendency and capacity to deceive a substantial portion of the public. Defendants' unfair acts and practices as set forth herein are not reasonable in relation to the development and preservation of business and are inconsistent with the public interest and had a public impact.

132.    Defendants' have committed and continue to commit deceptive acts and practices in the conduct of trade or commerce by making misrepresentations, omissions, and concealment of facts contrary to their own research and knowledge about the hazards and dangers of AFFF containing PFASs to Plaintiff, members of the Classes, and the public at large.  Defendants' deceptive acts, practices, and pattern of business conduct is a part of each Defendant's business and general course of conduct, and have the capacity to deceive the general public in a manner that is likely to continue to deceive the public about the hazards and dangers of its AFFF.  Defendants' acts and practices have been ongoing prior to Plaintiff acquiring her property and prior to the deceptive acts and practices involving Plaintiff.

133.    The unfair and deceptive acts, omissions, and practices of Defendants, as described herein, are within the penumbra of common law, statutory, or other established concept of unfairness, are immoral, unethical, oppressive, and unscrupulous, and cause substantial injury to Plaintiff, members of the Classes, and the public. Defendants' acts, omissions, and practices further constitute unfair and deceptive acts and practices in that

COMPLAINT - 34

1   Defendants' conduct offends the public policy to warn of and eliminate persistent exposures to

2   bio-accumulative PFASs that pose human health or environmental threats.

3       134.    Defendants' sought and continue to seek to profit and capitalize on their

4   continuing unlawful acts described herein and the violations of Plaintiff's and the members of

5   the Classes' applicable legal rights. As a direct and proximate result of Defendants' unlawful,

6   unfair, and deceptive acts and practices, Plaintiff and members of the Classes have suffered

7   harm and injury, including but not limited to, monetary loss directly and proximately caused by

8   Defendants' unlawful and unfair conduct and business practices, as well as the violation of

9   their legal rights.

10      135.    Accordingly, Plaintiff and members of the Classes are entitled to, and hereby

11  seek, an order of this Court enjoining Defendants from continuing to conduct business through

12  unlawful, unfair, and/or deceptive acts and practices, and to take corrective action as set forth

13  herein.

14      136.    Plaintiff and members of the Classes are further entitled to, and hereby seek an

15  order for their actual damages, as well as any other further equitable relief this Court may deem

16  necessary, just, and proper under the circumstances. Additionally, Plaintiff and members of the

17  Classes seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute.

18      137.    Defendants' acts, failures to act, and omissions were knowing, willful, and

19  committed, performed, and made with oppression, fraud, and/or malice to promote sales of

20  AFFF containing PFASs, in conscious disregard of the dangerous consequences and reasonably

21  foreseeable toxic impacts on Plaintiff, members of the Classes, and the public health and

22  welfare. Plaintiff requests an award of treble the actual damages sustained for Plaintiff and each

23  of the members of the Classes, not to exceed twenty-five thousand dollars each for Plaintiff and

24  each of the members of the Classes, as allowed by RCW 19.86.090.

25

26

COMPLAINT - 35

1

**PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, requests

3  the Court:

4      a.      Certify this case as a class action on behalf of the members of the Classes

5  defined above, appoint Krista Jackson as Class representative, and appoint her attorneys as

6  Class Counsel;

7      b.      Award declaratory and other equitable relief as is necessary to protect the

8  interests of Plaintiff and Class Members;

9      c.      Declare that Defendants acted with negligence, gross negligence, and/or willful,

10 wanton, and careless disregard for the health, safety, and property of Plaintiff and Class

11 Members;

12     d.      Order Defendants to pay for a testing and monitoring protocol to test each

13 property and its drinking water for the properties belonging to the members of the Property

14 Damage Class and the Town of Coupeville water supply;

15     e.      Order the establishment of a medical monitoring protocol for Plaintiff and the

16 Medical Monitoring Class;

17     f.      Award injunctive relief as is necessary to protect the interests of Plaintiff and the

18 Class Members;

19     g.      Award general damages, compensatory damages, nominal damages, and/or

20 treble damages not to exceed twenty-five thousand dollars each for Plaintiff and each of the

21 members of the Classes under RCW 19.86.090, and/or treble damages under RCW 4.24.630  to

22 the extent allowable to Plaintiff and Class Members in an amount to be determined at trial;

23     h.      Award Plaintiff and Class Members their reasonable litigation expenses and

24 attorneys' fees;

25     i.      Award Plaintiff and Class Members pre- and post-judgment interest to the extent

26 allowable; and

COMPLAINT - 36

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206 682.2992

1          j.       Award such other and further relief as equity and justice may require or which

2 the Court may deem just and proper.

3         DATED this 5th day of February, 2019.

4                     TOUSLEY BRAIN STEPHENS PLLC

5                     By: *s/ Janissa A Strabuk*
                    By: *s/ Kaleigh N. Powell*

6

7                         Janissa A. Strabuk, WSBA #21827
                        jstrabuk@tousley.com

8                         Kaleigh N. Powell, WSBA #52684
                        kpowell@tousley.com

9                         1700 Seventh Avenue, Suite 2200
                        Seattle, Washington  98101

10                        Tel:  206.682.5600/Fax: 206.682.2992

11                         Robert L. Teel *(pro hac vice pending)*
                        lawoffice@rlteel.com

12                        Law Office Of Robert L. Teel
                        1425 Broadway

13                        Mail Code: 20-6690
                        Seattle, Washington 98122

14                        Tel: 866.833.5529/Fax: 855.609.6911

15                         Rafey S. Balabanian *(pro hac vice pending)*
                        rbalabanian@edelson.com

16                        Todd Logan *(pro hac vice pending)*
                        tlogan@edelson.com

17                        Edelson PC
                        123 Townsend Street, Suite 100
                        San Francisco, California 94107

18                        Tel: 415.212.9300/Fax: 415.373.9435

19                        Jay Edelson *(pro hac vice pending)*
                        jedelson@edelson.com

20                        Benjamin H. Richman *(pro hac vice pending)*
                        brichman@edelson.com

21                        Christopher L. Dore *(pro hac vice pending)*
                        cdore@edelson.com

22                        Eve-Lynn Rapp *(pro hac vice pending)*
                        erapp@edelson.com

23                        Edelson PC
                        350 North LaSalle Street, 14th Floor
                        Chicago, Illinois 60654

24                        Tel: 312.589.6370/Fax: 312.589.6378

25                        ***Attorneys for Plaintiff***

26

COMPLAINT - 37